## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., ST. JUDE MEDICAL SYSTEMS AB, and ST. JUDE MEDICAL S.C., INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> VOLCANO CORPORATION, <br><br> Defendant and Counterclaimant. | C. A. No. 10-00631-RGA-MPT <br><br><br> **JURY TRIAL DEMANDED** <br><br><br> PUBLIC VERSION <br> Filed: May 18, 2012 |

## VOLCANO CORPORATION'S BRIEF IN *OPPOSITION* TO PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF VOLCANO'S "PATENT LAW EXPERT" AND *CROSS-MOTION* TO STRIKE EXPERT REPORTS OF ST. JUDE'S INEQUITABLE CONDUCT EXPERTS

OF COUNSEL:
Frank E. Scherkenbach, *pro hac vice*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Email:  scherkenbach@fr.com


Todd G. Miller, *pro hac vice*
Michael M. Rosen, *pro hac vice*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Emails:  miller@fr.com; rosen@fr.com


Corrin N. Drakulich, *pro hac vice*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Email:  drakulich@fr.com


Dated:  May 7, 2012

Thomas Lee Halkowski (No. 4099)
A. Martina Tyreus Hufnal (No. 4771)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th floor
P. O. Box 1114
Wilmington, DE 19899-1114
Emails:  halkowski@fr.com; hufnal@fr.com
Telephone:  (302) 778-8407
Facsimile:  (302) 652-0607

Attorneys for Defendant and Counterclaimant
Volcano Corporation

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III.  Mr. Nixon should be allowed to testify about the unusual circumstances
      of the prosecution of three of St. Jude's asserted patents ......................................2

      A.    Under Delaware and Third Circuit Authority, Experts May
            Testify on Patent Office Procedures, if Helpful to the Trier of
            Fact......................................................................................2

      B.    Mr. Nixon Has Testified on Patent Practice and Procedure on
            Numerous Occasions ..................................................................3

      C.    Mr. Nixon's Testimony in This Case Will Be Helpful to the
            Trier of Fact ...........................................................................4

IV.   ST. JUDE'S EXPERT REPORTS ON INEQUITABLE CONDUCT
      SHOULD BE STRICKEN...............................................................7

      A.    Mr. Love's Inequitable Conduct Report Should Be Stricken if
            Mr. Nixon's Report is Stricken....................................................7

      B.    Mr. Mason's Inequitable Conduct Report Should Be Stricken ................7

            1.    Mr. Mason's Opinions on Intent and State of Mind
                  Should be Stricken ...........................................................7

            2.    Mr. Mason's Newly-Presented Invalidity Opinions
                  Should Be Stricken .......................................................9

            3.    Mr. Mason's Remaining Opinions Should be Stricken as
                  Duplicative ...............................................................13

      C.    Dr. Najafi's Inequitable Conduct Expert Report Should be
            Stricken ................................................................................14

            1.    Sections VII, VIII, and IX of Dr. Najafi's Report Should
                  be Stricken Because it Lacks a Sound Legal Basis.....................14

            2.    Section X of Dr. Najafi's Report Should Be Stricken
                  Because It Merely Restates the Contents of a Factual
                  Declaration..............................................................17

3.    The Remainder of Dr. Najafi's Report Should Be
Stricken Because It Does Not Contain Information
Useful to the Court ......................................................................17

V.    INEQUITABLE CONDUCT DISCOVERY SHOULD BE
CONDUCTED AFTER TRIAL IN THE INTEREST OF
EFFICIENCY FOR THE PARTIES AND THE COURT ..................................17

VI.    CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*B. Braun Melsungen AG v. Terumo Medical Corp.*,
 749 F. Supp. 2d 210 (D. Del. 2010)......................................................................9

*Bassali v. Johnson Controls*,
 Case No. 1:08-cv-00029 PLM (W.D. Mich.) ........................................................4

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
 79 F. Supp. 2d 252 (W.D. N.Y. 2000).................................................................3

*Bayer Schering Pharma A.G. v. Barr Laboratories, Inc.*,
 2008 WL 628592 (D.N.J. March 3, 2008).............................................................3

*BorgWarner, Inc. v. Honeywell Int'l, Inc.*,
 750 F. Supp. 2d 596 (W.D.N.C. 2010) .................................................................8

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
 2007 WL 521894 (D. Del. Feb. 15, 2007)...........................................................10

*Brigham and Women's Hospital, Inc. v. Teva Pharmaceuticals USA, Inc.*,
 2010 WL 3907490 (D. Del. Sept. 21, 2010).........................................................2

*Broadcom Corp. v. Qualcomm Inc.*,
 543 F.3d 683 (Fed. Cir. 2008)...............................................................................7

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
 40 F.3d 1223 (Fed. Cir. 1994)............................................................................15

*D & D Assoc., Inc. v. Board of Educ. Of North Plainfield*,
 2009 WL 6315315 (D.N.J. Feb.27, 2009) ..........................................................11

*Dey v. Sepracor*,
 C.A. No. 1:07-cv-2353 (JGK) (S.D.N.Y.) ............................................................4

*Dunn v. Hovic*,
 1 F.3d 1362 (3rd Cir. 1993) .................................................................................3

*Flickinger v. Toys R Us*,
 2011 WL 3359646 (M.D. Pa. Aug. 3, 2011) .......................................................11

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
 394 F.3d 1368 (Fed. Cir. 2005)...........................................................................8

*Gen. Battery Corp. v. Gould, Inc.*,
 545 F. Supp. 731 (D. Del. 1982) (Schwartz, J.)...................................................3

*Island Intellectual Property LLC v. Deutsche Bank AG*,
   2012 WL 526722 (S.D.N.Y. Feb.14, 2012)................................................................17

*L'Oreal S.A. v. Revlon Consumer Prods. Corp.*,
   2008 WL 5868688 (D. Del. Sept. 30, 2008)..............................................................2

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977)...................................................................................10

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
   976 F.2d 1559 (Fed. Cir. 1992)................................................................................3

*National Pasteurized Eggs v. Michael Foods*,
   C.A. No. 10-cv-646 (W.D. Wis.)............................................................................3

*NTP, Inc. v. Research In Motion, Ltd*,
   418 F.3d 1282 (Fed. Cir. 2005)................................................................................4

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004).........................................................................8

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993)..............................................................................15

*Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*,
   2006 WL 2241018 (D. Del. Aug. 4, 2006)...............................................................2

*Protostorm v. Antonelli, et al.*,
   CA No. 08 civ. 931 (NGG)(JO) (E.D.N.Y.).............................................................4

*Reckitt Benckiser, Inc. v. Tris Pharma, Inc.*,
   2011 WL 6722707 (D.N.J. Dec.21, 2011).........................................................11, 13

*Regents of the Univ. of Cal. v. Howmedica, Inc.*,
   530 F.Supp. 846 (D. N.J. 1981)..............................................................................3

*Revlon Consumer Prods. Corp. v. L'Oreal, S.A.*,
   No. 96-192 MMS, 1997 WL 158281 (D. Del. Mar. 26, 1997) (Schwartz, J.).........................3

*Sargent Manufacturing Co. v. Cal-Royal Products, Inc.*,
   CA No. 3:08 cv 00408 (CFD) (D. Conn.)................................................................4

*St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electric Industrial Co.*,
   2012 WL 1015993 (D. Del. March 26, 2012).....................................................10, 13

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)................................................................................3

*Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*,
    2003 WL 25695241 (N.D. Ohio Feb. 18, 2003) ....................................................................7

*THK Am., Inc. v. NSK, Ltd. & NSK Corp.*,
    917 F. Supp. 563 (N.D. Ill. 1996) .......................................................................................3

*Trading Technologies, Int'l v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) ..........................................................................................3

*University of Pittsburgh of Commonwealth System of Higher Educ. v. Hedrick*,
    573 F.3d 1290 (Fed. Cir. 2009) ........................................................................................15

*Viking Yacht Co. v. Composites One LLC*,
    610 F. Supp. 2d 333 (D.N.J. 2009) ...................................................................................16

OTHER AUTHORITIES

Federal Rule of Evidence 702 ....................................................................................................3

## I.      INTRODUCTION

After serving three expert reports of its own on issues pertaining to its inequitable conduct counterclaims, St. Jude now moves to exclude Volcano's **_lone_** expert report on inequitable conduct.  While Volcano believes that all inequitable conduct issues should be postponed until after trial, and has presented multiple proposals—all of which St. Jude has rejected—to resolve these issues without the Court's involvement, it is St. Jude's, not Volcano's, inequitable conduct expert reports that should be stricken.

Volcano's report by Larry Nixon on patent practices and procedures addresses the unusual factual circumstances surrounding St. Jude's prosecution of three of its asserted patents, including the use and import of international search reports and foreign counterpart applications, and as such will prove helpful to the Court in resolving the disputed issues.  St. Jude's inequitable conduct reports by Anthony Mason and Khalil Najafi, in contrast, ███

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████ For all the reasons set forth in detail below, Volcano respectfully requests that the Court deny St. Jude's motion to strike Mr. Nixon's report and grant Volcano's cross-motion to strike St. Jude's inequitable conduct expert reports.

Finally, Volcano respectfully submits that the parties' time and effort, as well as the Court's limited resources, would be best served by postponing until after trial all inequitable conduct issues—many of which may be rendered moot after the liability trial.  Volcano, therefore, requests that the Court order such a postponement so that the parties and the Court can focus their attention and resources on the critical liability issues and associated approaching deadlines, including claim construction and summary judgment.

1

## II.    NATURE AND STAGE OF THE PROCEEDINGS

St. Jude filed its complaint against Volcano on July 27, 2010 alleging infringement of

five patents relating to intravascular guidewires used to diagnose and treat cardiovascular

conditions.  (D.I. I.)  Volcano filed its Answer to the Complaint with Counterclaim against St.

Jude on September 20, 2010 and subsequently filed an Amended Answer to Complaint and

Counterclaim on October 8, 2010.  On December 15, 2010, the parties submitted, and on January

5, 2011, the Court entered, a Scheduling Order setting fact and expert discovery cutoffs.  (D.I. 19

at 2; "SO ORDERED" Docket Entry, 1/5/11.)  Upon agreement of the parties, the Court revised

the expert discovery deadline to require opening expert reports to be exchanged on January 27,

2012.  (D.I. 126; "SO ORDERED" Docket Entry, 1/13/12.)  The parties then further agreed to—

and did—exchange opening expert reports on February 1, 2012.  Mr. Mason, however, served

his inequitable conduct report on April 13, 2012.  Trial is scheduled for October 15, 2012.

## III.   MR. NIXON SHOULD BE ALLOWED TO TESTIFY ABOUT THE UNUSUAL CIRCUMSTANCES OF THE PROSECUTION OF THREE OF ST. JUDE'S ASSERTED PATENTS

### A.    Under Delaware and Third Circuit Authority, Experts May Testify on Patent Office Procedures, if Helpful to the Trier of Fact

Numerous courts in this District, this Circuit, and elsewhere have held that expert

witnesses may testify on USPTO procedures.  *See, e.g.*, *Brigham and Women's Hospital, Inc. v.*

*Teva Pharmaceuticals USA, Inc*., 2010 WL 3907490 (D. Del. Sept. 21, 2010) (granting motion

to strike patent law expert's report except to the extent that it explains the PTO's practices and

procedures); *L'Oreal S.A. v. Revlon Consumer Prods. Corp*., 2008 WL 5868688 (D. Del. Sept.

30, 2008) (allowing testimony of patent law expert but limiting it to matters of USPTO practice

and procedure); *Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc*., 2006 WL 2241018

(D. Del. Aug. 4, 2006) (allowing testimony of patent law expert but restricting it to PTO practice

and procedure and excluding legal conclusions or substantive issues of patent law); *Revlon Consumer Prods. Corp. v. L'Oreal, S.A.*, No. 96-192 MMS, 1997 WL 158281, *3 (D. Del. Mar. 26, 1997) (Schwartz, J.); *Gen. Battery Corp. v. Gould, Inc.*, 545 F. Supp. 731, 758 n. 30 (D. Del. 1982) (Schwartz, J.); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255 (W.D. N.Y. 2000); *Regents of the Univ. of Cal. v. Howmedica, Inc.*, 530 F.Supp. 846, 854 (D. N.J. 1981); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1568 n. 2 (Fed. Cir. 1992); *THK Am., Inc. v. NSK, Ltd. & NSK Corp.*, 917 F. Supp. 563, 576 (N.D. Ill. 1996).  In addition, the Third Circuit has adopted a broad interpretation of Federal Rule of Evidence 702, holding that close calls on the admission of expert testimony should be resolved in favor of admissibility.  *Dunn v. Hovic*, 1 F.3d 1362, 1367 (3rd Cir. 1993); *see also Sundance, Inc. v. DeMonte Fabricating Ltd.,* 550 F.3d 1356, 1363 n.5 (Fed. Cir. 2008) ("patent lawyers might offer testimony in contexts other than noninfringement and invalidity, such as patent office practice and procedure").

**B.    Mr. Nixon Has Testified on Patent Practice and Procedure on Numerous Occasions**

Mr. Nixon—a seasoned and experienced patent practitioner—has himself testified on numerous occasions as an expert on patent practice and procedure.  *See, e.g.*, *Trading Technologies, Int'l v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010) (finding the district court did not abuse its discretion in allowing Mr. Nixon to testify generally about the written description requirement without offering legal conclusions as to the adequacy of the provisional applicant's disclosure); *Bayer Schering Pharma A.G. v. Barr Laboratories, Inc.*, 2008 WL 628592 (D.N.J. March 3, 2008) (Mr. Nixon testified as patent procedure expert on Rule 56 disclosure duties).  In fact, Mr. Nixon is scheduled to testify at several upcoming trials this calendar year, including *National Pasteurized Eggs v. Michael Foods*, C.A. No. 10-cv-646 (W.D. Wis.), *Dey v. Sepracor*,

C.A. No. 1:07-cv-2353 (JGK) (S.D.N.Y.), *Bassali v. Johnson Controls*, Case No. 1:08-cv-00029 PLM (W.D. Mich.), *Protostorm v. Antonelli, et al.*, CA No. 08 civ. 931 (NGG)(JO) (E.D.N.Y.), and *Sargent Manufacturing Co. v. Cal-Royal Products, Inc.*, CA No. 3:08 cv 00408 (CFD) (D. Conn.).  In *NTP, Inc. v. Research in Motion, Ltd*, 418 F.3d 1282, 1325 (Fed. Cir. 2005), a case St. Jude cites in support of its motion to exclude, the Federal Circuit affirmed the district court's decision to preclude Mr. Nixon from testifying about substantive issues of the law of written description, but nevertheless held that "[o]ur decision that the district court did not abuse its discretion in excluding the particular testimony in this case should not be read as expressing a view on the propriety of the use of patent attorneys as experts on patent law issues generally."

**C.      Mr. Nixon's Testimony in This Case Will Be Helpful to the Trier of Fact**

Mr. Nixon opines in his report ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ As set forth in detail in Mr. Nixon's report, ████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████



At trial, Mr. Nixon intends to place into context the various complex facts and circumstances surrounding these events, including the nature and import of

international search obligations and information disclosure statements, best practices of patent practitioners in submitting to the Patent Office prior art references identified during international search obligations, and how or whether patent practitioners prosecuting applications would be aware of prior art references cited in other applications.

In addition, in his report, Mr. Nixon provides general background on patent practice and procedures as they would apply to the unusual circumstances of these prosecutions. Mr. Nixon has substantial expertise as a patent practitioner, having prepared or prosecuted more than 3,000 patent applications during his career. (*Id.* at 2.) He also holds a bachelor's and a master's degree in electrical engineering, and has prosecuted hundreds of patent applications in these fields. (*Id.* at 1.) As such, he is well qualified to opine on technical aspects of this case as they apply to the circumstances of St. Jude's patent prosecution activities. Thus, Mr. Nixon has also offered the opinion, based on his own technical expertise and consistent with the opinion of Volcano's technical expert Dr. Thomas Kenny,[1] ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ Volcano, of course, knows that this Court has a long history of precluding attorneys from testifying on basic issues of substantive patent law, and Mr. Nixon has no intention of doing so. However, if the Court finds Mr. Nixon's opinions on materiality helpful, and to the extent the Court is inclined to allow similar opinions by St. Jude's experts, Mr. Nixon would be prepared to provide them as well. Mr. Nixon's testimony will otherwise relate solely to the application of his experience and understanding of detailed patent procedures and practices to the complex and unique factual circumstances of this case.

Accordingly, the Court should deny St. Jude's motion to strike Mr. Nixon's report.

## IV.   ST. JUDE'S EXPERT REPORTS ON INEQUITABLE CONDUCT SHOULD BE STRICKEN

### A.   Mr. Love's Inequitable Conduct Report Should Be Stricken if Mr. Nixon's Report is Stricken

St. Jude submitted an inequitable conduct report responsive to Mr. Nixon's report by John Love, St. Jude's own expert on patent practice and procedure.  The two reports are, in effect, mirror images of one another.  To the extent the Court is inclined to strike Mr. Nixon's report, therefore, it should also strike Mr. Love's report.

### B.   Mr. Mason's Inequitable Conduct Report Should Be Stricken

St. Jude submitted an inequitable conduct report by Anthony Mason, its liability expert on Volcano's asserted '994 patent, that should be stricken because it contains ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

Put differently, there is nothing in Mr. Mason's inequitable conduct report that is not either improper or duplicative, and his report will therefore not be useful to the Court.

#### 1.   Mr. Mason's Opinions on Intent and State of Mind Should be Stricken

Expert testimony on intent, including in the context of inequitable conduct, is universally disfavored, including in this court.  "The question of intent is one for the court to decide; it is therefore not a subject suitable for expert testimony."  *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, 2003 WL 25695241 at *1 (N.D. Ohio Feb. 18, 2003) (citing *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, 1997 WL 158281 at *3 (D. Del. Mar. 26, 1997)).  *See also Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008) ("intent to induce infringement 'is a

---

[1] Dr. Kenny opines in his own expert report that ████████████████████████████████

factual determination particularly within the province of the trier of fact'") (internal citation

omitted); *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004) (in

context of willfulness, allowing expert testimony as to "what the standard of behavior generally

is when a corporation is confronted with an allegation of infringement," but excluding testimony

"as to whether [defendant's] behavior met the standard of reasonableness. . . or regarding

[defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be

inferred"); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005)

(noting intent to induce infringement "is a factual determination particularly within the province

of the trier of fact"); *BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 611

(W.D.N.C. 2010) (precluding "expert testimony regarding Honeywell's intent to deceive the

Patent Office").





However qualified Mr. Mason may claim to be about technical issues,

These opinions are not helpful to this Court, the trier of fact, and accordingly, should be excluded.

### 2.    Mr. Mason's Newly-Presented Invalidity Opinions Should Be Stricken

Untimely evidence, including information belatedly provided by expert witnesses, is subject to exclusion.  "Pursuant to Rule 37(c)(1), the Court has the power to exclude evidence as a sanction for a party's failure to comply with its obligations under the rules, including the specific deadlines and obligations imposed by a scheduling order."  *B. Braun Melsungen AG v. Terumo Medical Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010).  Rule 37(c)(1) requires that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to support evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *Id.*  "In determining whether a failure to disclose is harmless courts consider such factors as: (1) the importance of the

information withheld; (2) the prejudice or surprise to the party against whom the evidence is

offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5)

the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not

disclosing the evidence (the 'Pennypack factors')." *Id.* (citing *Konstantopoulos v. Westvaco

Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *Meyers v. Pennypack Woods Home Ownership Ass'n*,

559 F.2d 894, 904–905 (3d Cir. 1977)); *see also Bridgestone Sports Co. Ltd. v. Acushnet Co.*,

2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (precluding accused infringer from "relying on

its untimely disclosed prior art references" because the references in question were available to

the accused infringer long before it disclosed them; and because patentee would "be required to

conduct additional fact and expert discovery in order to formulate a proper response," which

"would necessarily require extensions of the deadlines set by the Court").

       This Court and its sister courts in the Third Circuit have on several occasions stricken

belatedly disclosed expert opinions.  In *St. Clair Intellectual Property Consultants, Inc. v.

Matsushita Electric Industrial C*o., 2012 WL 1015993 (D. Del. March 26, 2012), this Court

applied the *Pennypack* factors to deny plaintiff's motion to supplement expert reports, finding

that "[a]lthough styled as a motion to supplement, St. Clair's request to file supplemental expert

reports is also a request to add additional infringement theories. St. Clair is seeking to add these

new infringement theories to the case beyond the Scheduling Order's January 19, 2009 deadline

for serving infringement contentions."  *Id*. at *5.  This Court further held that "[a]lthough the

sanction here is, nonetheless, extreme, the fact remains that St. Clair violated the Scheduling

Orders when it failed to raise all of its infringement contentions at the appropriate time." *Id*. at

*7.  In addition, the Court found that "the Defendants will likely suffer prejudice if St. Clair is

allowed to supplement its expert reports because Defendants will have to spend additional time

and money to refute St. Clair's new theories." *Id. See also Reckitt Benckiser, Inc. v. Tris Pharma, Inc.*, 2011 WL 6722707, at *3 (D.N.J. Dec.21, 2011) (upholding magistrate's exclusion of untimely supplemental expert report that introduced new infringement opinions and "contained several pages of opinions on infringement and referenced hundreds of pages of new documents containing data"); *Flickinger v. Toys R Us*, 2011 WL 3359646 (M.D. Pa. Aug. 3, 2011) (excluding untimely supplemental damages expert reports that sought to add additional cost analyses); *D & D Assoc., Inc. v. Board of Educ. Of North Plainfield*, 2009 WL 6315315 (D.N.J. Feb.27, 2009) (order denying supplemental expert report that attempted to "bootstrap" counterclaim that court had previously denied).

Here, Mr. Mason and St. Jude are using his inequitable conduct report as an opportunity to bootstrap new invalidity opinions not previously presented in his opening validity report. ██

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Then, after Volcano's expert demonstrated in his rebuttal report why these portions did not meet the respective limitations, Mr. Mason used the inequitable conduct report as a vehicle to inject new opinions into the case.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████



Once again, St. Jude is attempting to introduce new, untimely invalidity opinions without regard to the strictures of the scheduling deadlines ordered by this Court.[3]  Like St. Clair, St. Jude has once again flouted the Scheduling Order by "fail[ing] to raise all of its [invalidity arguments] at the appropriate time."  *St. Clair*, 2012 WL 1015993, at *5.  And like the defendants in *St. Clair*, Volcano "will likely suffer prejudice if St. [Jude] is allowed to supplement its expert reports because [Volcano] will have to spend additional time and money to refute St. [Jude's] new theories."  *Id.*; *see also Reckitt Benckiser*, 2011 WL 6722707, at *3.  Responding to St. Jude's newly-presented invalidity theories will require Volcano to expend substantial time and money preparing rebuttal reports and taking and defending supplemental depositions.  Allowing Mr. Mason's report to stand will also lead inexorably to a cycle of report supplementation with no end.  This is the stage of the case when the parties should be focusing their attention on claim construction, summary judgment, and trial preparation, not chasing around belatedly-conceived invalidity opinions.  St. Jude, apparently not chastened in the slightest by Magistrate Judge Thynge's exclusion of St. Jude's previous round of belatedly-produced information in violation of the Scheduling Order,[4] has engaged in similar litigation tactics once again, and Volcano respectfully requests that the Court put an end to such conduct.

### 3.       Mr. Mason's Remaining Opinions Should be Stricken as Duplicative

After removing from Mr. Mason's inequitable conduct expert report ██████████ ████████████████████████████████████████████████████████ all that remains, apart from legal standards and other background information, is duplicative of information Mr. Mason has already presented in his opening report on the validity of the '994

---

[3] *See* D.I. 136 (Order by Magistrate Judge Thynge, upon teleconference, striking certain of St. Jude's belatedly-produced prior art materials).

[4] The Court is scheduled to hear argument regarding that exclusion order on May 31, 2012.

patent.  If the Court is inclined to strike Mr. Mason's ████████████████████████████ ██████████████████████████ opinions, the Court should also strike the remainder of the report, as it is duplicative of Mr. Mason's opening validity report; to the extent Mr. Mason testifies to the substance of that report during the jury trial, the Court will have that record available to it for the purposes of considering St. Jude's inequitable defense as well.

### C.     Dr. Najafi's Inequitable Conduct Expert Report Should be Stricken

A third St. Jude expert report, by Dr. Khalil Najafi, should also be stricken because Dr. Najafi's opinions either lack a sound legal basis or merely repeat the contents of a factual declaration.  The remainder of Dr. Najafi's report, like the remainder of Mr. Mason's report, contains no information that would be helpful to the Court and should therefore be stricken, too.

### 1.     Sections VII, VIII, and IX of Dr. Najafi's Report Should be Stricken Because They Lack a Sound Legal Basis

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████  The claims of the '827 patent are directed to a pressure-sensing guidewire with a housing and a pressure sensor with certain characteristics.  ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████

---

[5] Volcano, of course, vigorously disputes this assertion and observes that even if it had any merit, it would have no bearing on the distant and distinct claims of the '965 patent, which are directed to different subject matter.

First, the '827 patent is not asserted in this case so Dr. Najafi's opinions are irrelevant for that reason alone.

Second, Dr. Najafi confuses conception and reduction to practice. "Conception is the touchstone of inventorship under 35 U.S.C. § 116." *University of Pittsburgh of Commonwealth System of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009). It is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). An inventor need not know that his invention will work for conception to be complete. *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993). He need only show that he had the complete mental picture and could describe it with particularity; the discovery that the invention actually works is part of its reduction to practice. *Id.*



**2.      Section X of Dr. Najafi's Report Should Be Stricken Because It Merely Restates the Contents of a Factual Declaration**

It is improper to use an expert report to lend an imprimatur of expertise to a factual declaration. *Island Intellectual Property LLC v. Deutsche Bank AG*, 2012 WL 526722 (S.D.N.Y. Feb.14, 2012) ("It is inappropriate for experts to act as mere conduits for others' hearsay, or as vehicles for factual narrative."); *Viking Yacht Co. v. Composites One LLC*, 610 F. Supp. 2d 333 (D.N.J. 2009) (statements of facts do not constitute opinion testimony and are not admissible as expert testimony). ███████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████████████

████████████████ These are not helpful expert opinions because they are not opinions at all. This exercise in stenography cannot assist the trier of fact and, as such, should be stricken.

**3.      The Remainder of Dr. Najafi's Report Should Be Stricken Because It Does Not Contain Information Useful to the Court**

As with Mr. Mason's report, once Sections VII, VIII, IX, and X of Dr. Najafi's report are stricken, the remainder of the report does not contain any information that would be helpful to the Court.  Accordingly, the entire report should be stricken.

**V.      INEQUITABLE CONDUCT DISCOVERY SHOULD BE CONDUCTED AFTER TRIAL IN THE INTEREST OF EFFICIENCY FOR THE PARTIES AND THE COURT**

There is no reason for the Court to have to hear these motions at this stage of the case, and Volcano did what it could to avoid having to bring them before the Court.  First, Volcano proposed, in the spirit of compromise, that the parties mutually withdraw all of their inequitable conduct expert reports.  (Ex. 7 (Email exchange btw. Volcano and St. Jude) at 4-5.)  When St.

Jude summarily rejected that offer, Volcano proposed that the parties postpone inequitable conduct discovery in its entirety until after trial.  (*Id.* at 6-7.)  After St. Jude declined that proposal, too, choosing to file this motion instead, Volcano presented a third offer, namely, that the parties dismiss their inequitable conduct claims in their entirety.  (*Id.* at 1-2.)  Once again, St. Jude rejected this proposal.  (*Id.*)

Nevertheless, Volcano continues to believe that it makes little sense to conduct inequitable conduct discovery at this stage for numerous reasons.  First and foremost, the parties are facing numerous claim construction, summary judgment, and pretrial deadlines in the coming months and should be devoting all of their attention and resources to the many disputed liability issues to be considered at trial in this nine-patent case.  Drafting inequitable conduct reports and taking and defending related depositions would divert that attention and sap those resources.  St. Jude contemplates that the parties would draft an additional four expert reports and conduct six depositions during the next two months, precisely when the parties would be preparing claim construction and summary judgment briefing.  Furthermore, St. Jude's inequitable conduct allegations pertain to a new and distinct technology, namely silicon sensor chip design, which is not at issue in the liability phase of the case and whose introduction would inject new complexity and technical challenges for the parties and the Court.

Second, some or all of the parties' inequitable conduct theories may be rendered moot by liability rulings at summary judgment or at trial.  For instance, if St. Jude is found not to infringe the '994 patent, there would be no reason for it to pursue its inequitable conduct claim against that patent.  Conversely, if Volcano is found not to infringe the '598 and '763 patents, it may well not pursue its inequitable conduct claims against those patents.  Thus, conducting inequitable conduct discovery now, as opposed to after trial, is likely to squander the parties' and

the Court's time and resources.  It would make far more sense to defer such discovery until after the dust has settled on the disputed liability issues.

Third, allowing inequitable conduct issues to proceed during this busy time would result in additional summary judgment briefing by both sides on inequitable conduct-related issues. Both Volcano and St. Jude are likely to file summary judgment motions on various aspects of one another's inequitable conduct claims, thus further taxing their and the Court's resources. Postponing inequitable conduct issues until after trial would obviate this problem and, yet again, serve the interests of judicial efficiency.

These concerns animated Volcano's position during the April 3, 2012 hearing on St. Jude's motion to amend, when the Court permitted St. Jude to amend its complaint to add willfulness and inequitable conduct allegations after Volcano had consented, noting that Volcano did not believe such amendments would affect the case schedule.  When the Court asked counsel for Volcano if it would suffer prejudice if St. Jude were allowed to add its willfulness claim, counsel for Volcano explained that "there was never any, to my knowledge, on the issue of timing on that, never any meet and confer on that.  We do not have any problem with them adding willfulness."  (4/3/02 Hrg. Tr. at 17:11-18:6.)  With respect to inequitable conduct, counsel for Volcano indicated that "it's an issue for your Honor and not an issue for the jury" and that "it really turns on when you want to engage with those issues, either now…or let the allegations into the case and deal with them in due course."  (*Id.* at 18:11-21.)  Had Volcano known that St. Jude would serve numerous additional inequitable conduct expert reports and insist on rebuttal reports and depositions during the busy months otherwise occupied by claim construction, summary judgment, and pre-trial preparations, Volcano would never have consented to permit St. Jude to add its inequitable conduct allegations to the case.

19

For all these reasons, Volcano respectfully requests that inequitable conduct issues be postponed until after trial.

## VI.    CONCLUSION

For the above reasons above, Volcano respectfully requests that the Court deny St. Jude's motion to strike Mr. Nixon's expert report, grant Volcano's cross-motion to strike St. Jude's inequitable conduct expert reports, and postpone inequitable conduct discovery until after trial.

Dated:  May 7, 2012                    FISH & RICHARDSON P.C.


By:  */s/ Thomas L. Halkowski*
     Thomas L. Halkowski (No. 4099)
     A. Martina Tyreus Hufnal (No. 4771)
     222 Delaware Avenue, 17th floor
     P. O. Box 1114
     Wilmington, DE 19899-1114
     Emails:  halkowski@fr.com; hufnal@fr.com
     Telephone:  (302) 778-8407
     Facsimile:  (302) 652-0607


     Frank E. Scherkenbach, *pro hac vice*
     FISH & RICHARDSON P.C.
     One Marina Park Drive
     Boston, MA 02210-1878
     Email:  scherkenbach@fr.com
     Telephone:  (617) 542-5070
     Facsimile:  (617) 542-8906


     Todd G. Miller, *pro hac vice*
     Michael M. Rosen, *pro hac vice*
     FISH & RICHARDSON P.C.
     12390 El Camino Real
     San Diego, CA 92130
     Emails:  miller@fr.com; rosen@fr.com
     Telephone:  (858) 678-5070
     Facsimile:  (858) 678-5099


     Corrin N. Drakulich, *pro hac vice*
     FISH & RICHARDSON P.C.
     500 Arguello Street, Suite 500
     Redwood City, CA 94063
     Email:  drakulich@fr.com
     Telephone:  (650) 839-5070
     Facsimile:  (650) 839-5071


     ATTORNEYS FOR DEFENDANT
     VOLCANO CORPORATION


21