# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., ST. JUDE MEDICAL SYSTEMS AB, and ST. JUDE MEDICAL S.C., INC., | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    C. A. No. 10-631-RGA-MPT |
| VOLCANO CORPORATION, | : <br> : <br> : |
| Defendant. | : |

## MEMORANDUM ORDER

**I.    INTRODUCTION**

Currently before the court is St. Jude's request that the court exclude portions of Volcano's expert reports based on Volcano's purported "unilateral destructive testing and spoliation of a unique piece of evidence: a once-sealed, now destroyed, August 1997 Cardiometrics WaveWire guidewire ['the August 1997 WaveWire']."[1] Volcano's expert reports rely on the destructive testing of the WaveWire. According to St. Jude, that testing was allegedly "improperly conducted, and ruined the WaveWire so that it can no longer be tested by any other means."[2] Consequently, St. Jude requests the court exclude portions of Volcano's expert reports regarding the testing of the August 1997 WaveWire on the grounds of spoliation to avoid prejudice to St. Jude.[3]

**II.    GOVERNING LAW**

Trial courts have discretion to sanction a party when it destroys or alters relevant

---

[1] D.I. 144 at 1.
[2] *Id.*
[3] *Id.*

evidence.[4] The key considerations in determining whether spoliation sanctions are appropriate are:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.[5]

Potential sanctions include dispositive ones dismissing an action, allowing the finder of fact to draw an adverse inference from the destruction of evidence, or exclusion of the evidence that was destroyed.[6] "The district court must 'select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'"[7] In determining any appropriate sanction, Third Circuit courts have relied on the factors outlined in *Schmid* and the goals of "(1) deterring future spoliation of evidence; (2) protecting the [movant's] interests; and (3) remedying the prejudice [the movant] suffered . . . ."[8]

## III. DISCUSSION

On February 2, 2012, Volcano served on St. Jude an "Evans Analytical Group Laboratory Analysis Report for Fish & Richardson PC," prepared by Ian Ward (the "Ward Report") and an "Opening Report of Dr. Thomas Kenny on the Invalidity of the Asserted Claims of U.S. Patent Nos. 6,112,598 and 6,167,763" (the "Kenny Report"),

---

[4] *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)); *GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*, C.A. No. 99-070-GMS, 2004 WL 5702740, at *1 (D. Del. Mar. 29, 2004) ("The court has discretion to impose sanctions for the spoliation of relevant evidence.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); Fed. R. Civ. P. 37).
[5] *Schmid*, 13 F.3d at 79.
[6] *See, e.g., GE Harris Ry. Elecs., L.L.C.*, 2004 WL 5702740, at *2.
[7] *Micron Tech.*, 645 F.3d at 1329 (quoting *Schmid*, 13 F.3d at 79).
[8] *Micron Tech.,* 645 F.3d at 1329.

2

both with exhibits.[9] According to St. Jude, the Ward Report describes destructive testing of the August 1997 WaveWire. St. Jude states that without its prior consent, and without inviting St. Jude or its experts or outside consultants to help formulate the testing methods or attend the event, the August 1997 WaveWire was removed from its sealed packaging, filled with adhesive, and dissected by grinding. Dr. Kenny then relied on the results of that testing to opine the August 1997 WaveWire contained adhesive in certain places, despite the fact the Evans Analytical Group purportedly filled it with adhesive in its destructive testing.[10]

St. Jude notes it first learned Volcano possessed an old version of the WaveWire at issue during a September 27, 2011 deposition. On October 17, 2011, St. Jude served a Notice to Inspect the WaveWire and any other devices Volcano possessed.[11] In Volcano's objections and responses to the Notice to Inspect, it agreed to make the WaveWire available for "non-destructive" inspection at the Redwood City offices of Volcano's attorneys, Fish & Richardson P.C.[12] St. Jude contends it was only allowed to conduct a very limited inspection and that, while some guidewires were made available, Volcano had apparently already sent the sealed August 1997 WaveWire for testing.[13] St. Jude represents it was given oral instructions not to open any sealed packaging during the inspection and it could not observe much more of the guidewires other than a wire in a bag.[14] According to St. Jude, the WaveWire device is microscopic in size, and

---

[9] D.I. 144, Exs. E and F.
[10] *Id.*, Ex. G.
[11] *Id.*, Ex. B.
[12] *Id.*, Ex. C.
[13] *Id.*, Ex. D.
[14] *Id.* at 1.

its internal parts cannot be examined without x-ray microscope analysis.[15]

St. Jude maintains that, although Volcano's contention interrogatory responses and two supplements during fact discovery indicated it would rely upon documents concerning its WaveWire device, Volcano did not indicate it would rely on destructive or other testing of an actual WaveWire.[16] St. Jude insists those responses did not put it on notice that Volcano planned to conduct destructive testing on the August 1997 WaveWire after the close of fact discovery, and did not provide any information regarding Volcano's new invalidity theory–first described in the February 1, 2012 Kenny Report–that adhesive could be found in certain places inside the microscopic August 1997 WaveWire.[17] St. Jude argues as an excuse for its alleged spoliation, Volcano contends it orally advised St. Jude on December 19, 2011 that the August 1997 WaveWire was being dissected by Volcano's experts for the purposes of expert reports and would, therefore, not be made available at the December 22, 2011 inspection.[18] St. Jude disputes this excuse, averring Volcano only stated the WaveWire was being

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*, Ex. D. In a February 21, 2012 email from St. Jude attorney Tamar Duvdevani to Volcano attorney Michael Rosen, Duvdevani noted the destructive testing of the August 1997 WaveWire: "St. Jude was . . . surprised when it discovered that Volcano had permitted the destructive testing of the WaveWire without St. Jude's prior knowledge and consent, and without inviting St. Jude's expert to attend the destruction of the WaveWire." *Id.*, Ex. D at 2. The email continued, "it is St. Jude's position that Volcano has spoliated evidence by engaging in destruction of the WaveWire, and that all testimony and evidence relating to that WaveWire must be excluded." *Id.*, Ex. D at 2. St. Jude requested that Volcano "let us know whether Volcano will withdraw any evidence or opinions based upon this destructive analysis of the WaveWire." *Id.*, Ex. D at 2. The following day, February 22, 2012, Rosen responded to Duvdevani by email informing it would "not withdraw any evidence or opinions based upon the dissection and analysis of the [August] 1997 WaveWire performed by Evans Analytical Group (EAG)." *Id.*, Ex. D at 1. That response also states "[w]hen the parties met and conferred about this inspection on December 19[, 2011], Volcano notified St. Jude that two of the wires previously offered for inspection were now being dissected and analyzed by Volcano's experts for purposes of expert reports and would therefore not be made available at the December 22 inspection, but that identical, unaltered versions of each of those products would be made available to St. Jude for inspection on December 22." *Id.*, Ex. D at 1.

"tested" but not dissected.[19] St. Jude maintains it assumed any testing would be non-destructive, especially since non-destructive x-ray microscopy analysis is purportedly a common technique to examine guidewires. St. Jude contends Ward's testing used "incorrect experimental methodology" that makes it "impossible for St. Jude to provide its own testing."[20] To address the resultant prejudice allegedly suffered by St. Jude, it argues the portions of Volcano's expert reports based on the results of the destructive testing of the August 1997 WaveWire should be excluded.

Volcano vigorously disputes St. Jude's allegation that it "spoliated" "unique" evidence without St. Jude's "prior consent."[21] Volcano states it took precautions to avoid an "allegation of spoilation, including by insuring the third party scientist carefully documented the dissection, preserving its components, and notifying St. Jude of the dissection."[22] Volcano insists it "did not destroy any evidence; the analyzed components are available to St. Jude."[23] Volcano argues "even if the *Schmid* test is applied, Volcano is not at fault; St. Jude has not suffered any prejudice; and numerous other remedies exist besides the severe sanction of striking the dissection evidence altogether . . . ."[24] Volcano also criticizes the timing of St. Jude's objections to its expert reports: "St. Jude did not even raise this issue until **three weeks** after Volcano had

---

[19] *Id.* at 2.
[20] *Id.* at 3.
[21] D.I. 147 at 1.
[22] *Id.* Volcano states "[w]hen the parties met and conferred on December 19 about [St. Jude's inspection of certain WaveWires], Volcano notified St. Jude that one of the August 1997 WaveWires was now being dissected and analyzed by Volcano's experts for purposes of expert reports . . . and would therefore not be made available at the December 22 inspection. At that time, St. Jude voiced no concerns or objections about Volcano's dissection." *Id.* at 2 (footnote omitted); *Id.* at 2 n.6 ("Contrary to St. Judge's representation in its letter-brief, counsel for Volcano, Ms. Corrin Drakulich, expressly informed St. Jude that Volcano was dissecting one of the August 1997 WaveWires, not merely analyzing it.").
[23] *Id.* at 1.
[24] *Id.*

5

served both Mr. Ward's and Dr. Kenny's expert reports, and not coincidentally a few days after the Court struck St. Jude's belatedly produced alleged prior art devices."[25]

The court first considers Volcano's assertion St. Jude was on notice of the dissection of the August 1997 WaveWire at least as of the parties' December 19, 2011 meet and confer regarding St. Jude's December 22, 2011 inspection of other WaveWires, and that St. Jude did not register an objection to that testing. During a March 9, 2012 teleconference with the court, attorneys for each party adamantly disagreed as to what Volcano conveyed to St. Jude regarding the analysis Volcano's expert was conducting on the August 1997 WaveWire. Drakulich averred she explicitly told St. Jude attorney Nika Aldrich in the December meet and confer telephone call that Volcano was dissecting the August 1997 WaveWire and that St. Jude attorney Duvdevani was also on that call.[26] Duvdevani acknowledged the occurrence of the call, and Aldrich's presence during the call, but represented "it was not said to us once that this wire, which was called unique by Volcano, was being sent off for destructive testing."[27] In denying St. Jude was informed of Volcano's dissection of the August 1997 WaveWire, Duvdevani stated, had she been so informed, "[i]t would have triggered something with us. We never would have been okay with that language had it been said to us, which it was not."[28] After Duvdevani's representations, Drakulich reiterated that "I explicitly said dissected."[29] As the court noted at the time, "[n]ow we have three

---

[25] *Id.* at 3 n.9 (emphasis in original).
[26] Tr. of March 9, 2012 teleconference ("Tr. 3/9/12 t/c") at 48:3-15.
[27] Tr. 3/9/12 t/c at 48:23-49:4; *id.* at 49:14-17 (Duvdevani stated "[Drakulich] did say testing. We assumed x-ray or microscopic testing. We never were told it was destructive testing . . . .").
[28] *Id.* at 49:24-50:3.
[29] *Id.* at 51:13-14.

6

attorneys willing to basically testify exactly opposite of one another."[30]

Without making a determination of the accuracy of the attorneys' contradictory recollections involved in the December 19, 2011 meet and confer call, the court concludes St. Jude did not understand Volcano's experts were dissecting the August 1997 WaveWire at the conclusion of that call. This conclusion is based on St. Jude's assertion it would have objected to such testing had it been aware of it, particularly in light of the restrictions placed on St. Jude's December 22, 2011 inspection of other WaveWires in the offices of Volcano's attorneys.[31] That conclusion does not, however, mean the court makes the determination that Volcano's attorney did not attempt to apprise St. Jude of the planned dissection; it does not. Consequently, the court determines both that: (1) prior to receiving the Ward and Kenny Report in early February 2012, St. Jude did not understand the August 1997 WaveWire had been dissected and (2) Volcano did not willfully conceal the dissection prior to serving those reports.

The court now turns to Volcano's argument of no spoliation. Volcano asserts it submitted the "WaveWire device to a respected, independent third-party laboratory for objective dissection and analysis, taking care to make St. Jude aware of its activities and inviting St. Jude to inspect, including by microscopic and photographic means, several identical devices, which St. Jude did."[32] Volcano maintains it did not destroy

---

[30] *Id.* at 51:22-24.
[31] For instance, St. Jude stated "we weren't even allowed to do x-ray or any kind of analysis" of the other WaveWires during the inspection. *Id.* at 39:5-6; *id.* at 39:19-22, 40:12-15 ("[T]he wire is inside. There's a small plastic tubing case, and the wire is so small you can't see the wire in the photo because your eye and the camera can't pick it up. . . . You can't see the parts that are at issue from the outside . . . . The only way to do that is some kind of x-ray, which would allow you to see the metal parts.").
[32] D.I. 147 at 1.

any evidence and the analyzed components are available to St. Jude.[33] Volcano argues it contracted with EAG to dissect, *inter alia*, the August 1997 WaveWire "'to examine specific structural features of medical devices,' and specifically . . . to disassemble the product to determined the presence of an adhesive."[34] Ward "removed the August 1997 Wavewire from its packaging and . . . documented his procedures for mounting, dissecting, and analyzing the device, both in writing and with over 90 photographs and images (including digital photographs, optical microscopy photographs, X-Ray images, scanning electron microscopy (SEM) images, and SEM elemental analysis data sets) . . . ."[35] Volcano notes Ward preserved all components of the August 1997 WaveWire and made them available for St. Jude's inspection.[36] Volcano disagrees with St. Jude's contention that Ward contaminated the August 1997 WaveWire, filled it with adhesive, or destroyed it.[37] Rather, in order to permit dissection of the fragile device, Ward "potted" the items being studied in laboratory epoxy designed to be distinguishable from adhesives used in the WaveWire by its color, inclusion of marker particles, and well-characterized absorption spectra.[38] Volcano maintains the difference between the epoxy and the WaveWire adhesive is visible in the images taken by Ward.[39]

Volcano also insists "the August 1997 WaveWire specimen Mr. Ward analyzed was not 'unique.' Volcano preserved two other WaveWires–one from December 1997,

---

[33] *Id.*

[34] *Id.* (quoting D.I. 144, Ex. E (Ward Report) at 2).

[35] *Id.* at 2 (citing D.I. 144, Ex. E at 3-6; D.I. 147, Ex. 2 (Appendix A to Ward Report) at ll. 164-194, 660-718, 721-722).

[36] *Id.* (citing D.I. 144, Ex. D at 1-2 (February 22, 2012 email from Rosen to Duvdevani stating "all of the pieces of the WaveWire . . . dissected, extensively photographed and analyzed by EAG are available to St. Jude for non-destructive inspection if St. Jude so desires")).

[37] *Id.* at 2.

[38] *Id.*

[39] *Id.*

in a sealed package, and a second one from August 1997, in an unsealed package–and provided both to St. Jude for inspection."[40]

Volcano relies on *Schmid* in arguing no spoliation occurred here. Volcano notes the *Schmid* court declined to strike expert evidence in part because "Dr. Bratspies did not destroy the allegedly defective product . . . . All Dr. Bratspies did was disassemble the saw in an attempt to determine whether Schmid had a meritorious claim against the manufacturer of the saw."[41] The expert took "photographs of the saw prior to disassembly, the parts of the disassembled saw, and the debris," photographs that "corroborated Dr. Bratspies's observation regarding the presence of debris within the guard housing" and allowed the opposing expert "visual access to the saw prior to and immediately following disassembly."[42] Volcano points out the Third Circuit declined to hold that "an expert in Dr. Bratspies's position has an affirmative duty not to conduct an investigation without affording all potential defendants an opportunity to have an expert present."[43]

The *Schmid* case is distinguishable. Here, Ward did not simply "disassemble" the August 1997 WaveWire. Volcano admits it contracted EAG to "*dissect* various samples of guidewires . . . ."[44] Ward "potted" the WaveWire in laboratory epoxy and

---

[40] *Id.* (citing D.I. 147, Ex. 3 (October 28, 2011 email from Drakulich to Duvdevani) at 2). Volcano states "[b]oth August 1997 WaveWires were manufactured within two weeks of each other, were assembled according to the exact same manufacturing instructions, underwent their final inspection on the same day by the same operator, and received passing marks for each step of the manufacturing process." *Id.* at 2 n.5 (citing D.I. 147, Exs. 8 and 9 (VOLC01153129-31, VOLC01153064-66 (WaveWire data sheets))).
[41] *Schmid*, 13 F.3d at 79.
[42] *Id.*
[43] *Id.* at 81.
[44] D.I. 147 at 1 (emphasis added).

9

proceeded to dissect it and sequentially grind layers off it.[45] The court finds Ward's dissection of the August 1997 WaveWire substantially different from Dr. Bratspies's disassembly of the saw in *Schmid*.

The court is also not persuaded by Volcano's argument that no spoliation occurred because the August 1997 WaveWire dissected by Ward was not "unique." Accepting, *arguendo*, the second WaveWire manufactured in August 1997 that St. Jude was permitted to inspect is substantially the same as the one Ward dissected, St. Jude was not permitted to conduct similar experiments on the WaveWire available for inspection. Volcano stated it would make that WaveWire "available to St. Jude for inspection . . . [and] will permit St. Jude to take photographs and videos of the item[ ] . . . ."[46]

Because Volcano altered the August 1997 WaveWire, and did so without St. Jude understanding that alteration would occur, the court finds there has been spoliation. To determine what, if any, sanctions are appropriate in light of that finding, the court next examines the factors set forth in *Schmid*.

St. Jude argues the first factor, "the degree of fault of the party who altered or destroyed the evidence," weighs in its favor because "Volcano had exclusive possession of the WaveWire, and St. Jude, its counsel and its experts were given no opportunity to prevent the destruction of this evidence."[47]

---

[45] *See, e.g.*, D.I. 144, Ex. E at 4 (Ward Report describing "Lateral Section Analysis": "Selected devices were cut laterally at selected locations using a circular saw fitted with a silicon carbide blade. The exposed section was dry ground on 1200 grit silicon carbide metallurgical grinding paper on a metallographic polishing wheel until the region distorted by the sawing had been removed.").
[46] D.I. 147, Ex. 3 at 2.
[47] D.I. 144 at 2 (citing *Schmid*, 13 F.3d at 81).

Volcano contends it is not "at fault" for any purported spoliation because "St. Jude has been aware for months that Volcano was analyzing and dissecting one of the August 1997 WaveWires."[48] Volcano maintains St. Jude has not been surprised by Volcano's reliance on the WaveWire as prior art as Volcano identified the device in its August 1, 2011 invalidity contentions and produced copious amounts of documents relating to the WaveWire, as well as producing photographs of the specific wires in question in June 2011.[49] Volcano notes at the December 22, 2011 inspection of the provided WaveWires, two St. Jude attorneys (Lerner and Aldrich); its expert, Dr. Durfee; and a microscopy technician, Mr. Bennett, participated in a nearly four-hour process of analysis and microscopic photography of the various wires, including the second August 1997 WaveWire.[50] Volcano asserts "St Jude is mistaken in claiming that it 'was unable to see much more of the guidewires at the inspection other than a wire in a bag.' St. Jude's four-hour-long inspection, and dozens of microscopic photographs its representatives took, demonstrate the opposite."[51] Volcano also notes "Dr. Durfee took numerous photographs of his own of the August 1997 WaveWire, using his personal digital camera."[52] Volcano concludes, therefore, that "St. Jude both knew about Volcano's dissections and contented itself with an extensive inspection of an identical wire."[53]

---

[48] D.I. 147 at 2. Volcano repeats its assertion, previously rejected by the court, that it informed St. Jude during the December 19, 2011 meet and confer that it was dissecting the August 1997 WaveWire.
[49] *Id.* (citing D.I. 147, Ex. 4 (8/1/11 invalidity contentions); *id.*, Exs. 5 and 6 (August 1997 WaveWire, Serial No. 001387W; August 1997 WaveWire, Serial No. 001284W)).
[50] *Id.* at 3.
[51] *Id.* at 3 n.7.
[52] *Id.* at 3.
[53] *Id.*

The court previously rejected Volcano's assertion that St. Jude was on notice of Volcano's dissections when it performed its inspection of the WaveWires provided by Volcano. Also, as outlined above, St. Jude was neither permitted to conduct testing similar to that conducted by Ward nor permitted to perform analysis, for instance via x-ray, that St. Jude's counsel represented is necessary to examine the wire parts at issue here located inside the WaveWire. Because St. Jude was not aware that Volcano was dissecting the August 1997 WaveWire, it does not follow that St. Jude "contented itself with an extensive inspection of an identical wire."

The court determined Volcano altered the August 1997 WaveWire without prior, or contemporaneous, knowledge of St. Jude. The court agrees with St. Jude that Volcano's exclusive possession of the August 1997 WaveWire, and St. Jude's inability to prevent, or object to, Ward's dissection thereof, weighs in favor of finding Volcano "at fault" for altering that evidence.

In order to support the imposition of sanctions, however, St. Jude must establish "the degree of prejudice" it suffered.

St. Jude also contends this second factor weighs in its favor. It maintains prejudice has been found where "the adverse party's expert cannot rebut the findings of the spoliating party's expert because he or she cannot duplicate the conditions of the original evidence on which his or her counterpart relied in forming his testimony."[54] St. Jude alleges "[f]urther, material prejudice is present where the evidence destroyed is

---

[54] D.I. 144 at 3 (citing *Positran Mfg., Inc. v. Diebold, Inc.*, No. 02-466-GMS, 2003 WL 21104954, at *3 (D. Del. May 15, 2003) ("[W]hen one side is completely deprived of the opportunity to inspect the evidence because it was destroyed after the other side had a chance to examine it, sanctions for spoliation are generally appropriate.")).

12

unique, one-of-a-kind, or irreplaceable, as it is in the instant case."[55]  St. Jude contends Volcano's testing of the August 1997 WaveWire sought to identify the location of adhesive in the WaveWire's sensor housing; an important fact about which the parties disagree.[56]  According to documentary evidence, St. Jude contends a properly conducted test would have shown Volcano's position about that location is incorrect.[57]  St. Jude maintains, however, that Ward's testing caused the August 1997 WaveWire to be contaminated with adhesive which destroyed the device.[58]  St. Jude also complains that Volcano did not consult with it concerning Ward's testing methodology or invite it to observe as the testing was taking place.[59]  St. Jude concludes that because of Ward's improper testing, it is prejudiced by not being able to perform its own testing on the device.[60]

Volcano contends St. Jude has not been prejudiced because St. Jude inspected the second, purportedly identical, August 1997 WaveWire device which Volcano indicated St. Jude could further examine if it so desires.[61]  Volcano also states it has offered to make the dissected August 1997 WaveWire available to St. Jude.[62]  Volcano

---

[55] *Id.* at 3 (citing *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-35 (W.D. Pa. 2004) (in context of preservation order)).
[56] D.I. 144 at 3.
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] D.I. 147 at 3 (citing *In re Weschler*, 121 F. Supp. 2d 404, 414 (D. Del. 2000) ("[W]hen considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed.")).
[62] *Id.* (citing *In re Weschler*, 121 F. Supp. 2d 404, 414 (D. Del. 2000); *Schmid*, 13 F.3d 76, 79 (no spoliation sanctions when opposing experts were afforded "visual access to the saw prior to and immediately following disassembly"); *see also Santarelli v BP America*, 913 F. Supp. 324, 331 (M.D. Pa 1996) (applying *Schmid* factors in denying defendant's motion for summary judgment because "[w]hile it will almost always be the case that more testing may produce more extensive, more conclusive results, the fact that some testing was done by defendants' expert, giving them some independent, scientific basis

notes St. Jude will be able to question both Ward and Kenny about their reports at deposition and on cross-examination at trial to demonstrate the alleged contamination of the August 1997 WaveWire and improper testing methodologies.[63]

The court first rejects Volcano's argument that its offer of further, non-destructive, examination of the second August 1997 WaveWire rebuts St. Jude's claim of prejudice. St. Jude, however, was not completely deprived of the opportunity to inspect the evidence at issue. During the March 9, 2012 teleconference, Volcano advised it would permit St. Jude to test the dissected August 1997 WaveWire, even off-site, if St. Jude so desired. Apparently, St. Jude did not accept that offer as its expert, Dr. David Bugay, testified in a June 29, 2012 deposition that he never physically examined the dissected WaveWire.[64] Although Bugay testified to his belief that Ward's testing had so altered the dissected WaveWire there was no procedure that would restore it to its original state,[65] he could have bolstered his testimony through physical examination or testing of the wire; he did not.

Despite St. Jude choosing not to have Bugay examine the dissected WaveWire, Bugay was nevertheless able to form strong opinions about it from examination of the many photographs included in the Ward Report documenting the dissection. For instance, Bugay is absolutely certain he could say, without seeing the sample under a

---

for disagreeing with plaintiffs' position lessens the prejudice they have suffered.")).
  [63] D.I. 147 at 3.
  [64] *See, e.g.,* Tr. of June 29, 2012 Bugay deposition ("Tr. 3/29/12 Bugay dep.") at 89:2-17; *id.* at 123:18-124:6.
  [65] Tr. 3/29/12 Bugay dep. at 49:6-19; *see also id.* at 113:8-114:14 (Bugay stated if the platinum coating was removed from the surface of the WaveWire, Raman testing could be performed on the surface but "for that altered sample, and recognizing that it's altered, analysis can be done. But it's not representative. It's meaningless.").

14

microscope, that there was "a void or a crater or an area that doesn't have material in it based upon" a particular photograph.[66] Bugay is also able to articulate multiple reasons to cast doubt on Ward's testing and procedures.[67]

Consequently, the court determines Volcano's actions with respect to its dissection of the August 1997 WaveWire did not cause prejudice to St. Jude sufficient to strike portions of the Ward and Kenny Reports addressing that dissection.

## IV. CONCLUSION

For the reasons discussed above, St. Jude's request to strike (D.I. 144) is **DENIED**.

Date: October 9, 2012    /s/ Mary Pat Thynge
  UNITED STATES MAGISTRATE JUDGE

---

[66] *Id.* at 127:5-21.
[67] *See, e.g.*, *id.* at 13:2-14:6 (describing the issue regarding the August 1997 WaveWire as determining the chemical compound present at specific locations in the WaveWire and describing certain techniques, such as Raman spectroscopy, as the most appropriate for making such a determination); *id.* at 14:7-16:10 (stating techniques such as x-ray analysis, scanning electron microscopy or SEM, optical microscopy and EDS do not provide a chemical characterization as to what chemical is at a specific location); *id.* at 16:24-17:12 (criticizing the EDS technique, used by Ward, as only identifying elements present at the location of the analysis rather than providing chemical discrimination); *id.* at 19:2-20:2 (stating EDS and can cause degradation in the sample and can shift the location of sample components); *id.* at 98:14-101:25 (describing how he would have conducted a dissection of the WaveWire by making lateral cross-sectional cuts and explaining why he would not have made longitudinal cross-sectional cuts as did Ward); *id.* at 105:20-106:7 (describing the greater difficulty and resultant damage to the sample with Ward's longitudinal cuts); *id.* at 46:2-21 (stating Ward's use of potassium hydroxide and water and other materials could cause changes in the sample); *id.* at 53:4-54:3 (disagreeing with Ward's statement that it was standard practice to just take photographs and not keep a lab notebook of any kind when conducting this sort of procedure).